
SOUTHERN DISTRICT OF MISSISSIPPI
F I L E D
SEP 17 2010
J. T. NOBLIN, CLERK
BY_____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

SHAKESHIA FOXWORTH, ADMINISTRATRIX FOR
THE ESTATE OF LESTER FOXWORTH          PLAINTIFF

VS.          CAUSE NO. 2:10cv226 KS-MTP

CHANNEL CONTROL MERCHANTS, LLC
F/K/A HUDSON SUPPORT SERVICES, LLC
A/K/A HUDSON SALVAGE          DEFENDANT

## COMPLAINT
*** Plaintiff Demands Jury Trial ***

Plaintiff, Shakeshia Foxworth, files her Complaint against Defendants, Channel Control Merchants, LLC F/K/A Hudson Support Services, LLC A/K/A Hudson Salvage and states as follows:

## JURISDICTION AND VENUE

I.

This action arises under the Constitution of the United States and the laws of the United States. The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 2000e.

II.

1

Venue is proper in this district because Plaintiff resides in this district and Defendant is a Mississippi Corporation located and operated in this district and because the events giving rise to these claims arose in this district.

### III.

This Court has personal jurisdiction over the Defendants.

### PARTIES

### IV.

Plaintiff, Shakeshia Foxworth, is an adult resident citizen of Forrest County, Mississippi.

### V.

Defendant, Channel Control Merchants, LLC F/K/A Hudson Support Services, LLC A/K/A Hudson Salvage is a limited liability Mississippi corporation and process may be served by serving a copy of this Complaint and Summons on its Chief Executive, Rob Roberts, at 6892 United States Highway 49 North, Hattiesburg, Mississippi 39403 and/or the Mississippi Secretary of State, Delbert Hosemann at 401 Mississippi Street, Jackson, Mississippi 39201.

### FACTS

### VI.

Lester Foxworth [hereinafter "Foxworth"], a black male, was hired by Defendant in March of 2008 as Team Leader. In November of 2008, Foxworth was approached by Justin Eckrich, a white male who was the former Processing Manager and son-in-law of the company's owner, about taking taking on the position of Processing Manager since Justin Eckrich wanted to work in a different department. Subsequently, Foxworth began training for the position of Processing manager and officially assumed the position in January of 2009.

### VII.

After Foxworth began his new position of Processing manager, he was told by Rob Roberts, a white male, and CEO of the Defendant company, that Foxworth would have the option to obtain quarterly bonuses or wait until the following January when other bonuses are given out. When Foxworth opted for quarterly bonuses, Rob Roberts agreed. However, when the first quarter was up, Foxworth was told by Rob Roberts and Troy Ulrich, another white male, that he would have to wait until January of 2010. Foxworth continued to work with expectations of receiving his bonus in January 2010.

## VIII.

On September 16, 2009, Foxworth obtained a labor report that indicated that his predecessor, Justin Eckrich was making $175 more than Foxworth was for doing the same job. When Foxworth approached "Hazel" in human resources about the problem, she told Foxworth the discrepancy had to do with how his job title was in the computer system and that it was an easy fix. Hazel agreed with Foxworth that if he had been doing the same job as Justin Eckrich, then he should receive the same pay. Later that day, Foxworth was called into his immediate supervisor, Troy Ulrich, a white male, and was asked by Troy Ulrich, why he went to human resources as opposed to coming to Troy Ulrich directly. Foxworth responded that he had only received the labor report that day.

## IX.

Foxworth stated that Troy Ulrich immediately began making negative remarks about Foxworth's work and stated that Foxworth had not been doing a good job. Prior to going to human resources, Foxworth had no problems with Troy Ulrich and had never been verbally counseled or written up about his performance at work.

## X.

From September 2009 through November 2009, Troy Ulrich continued to question Foxworth's decisions about job related matters, override Foxworth's decisions, criticize Foxworth's work performance and demean Foxworth in the presence of the employees Foxworth supervised.

## XI.

On Wednesday, November 4, 2009, Defendant company was preparing for a site visit which required Foxworth to continuously walk the facility. During subject visit, Foxworth injured his leg and was given doctor's orders to remain off work for the next two days. On the following Saturday, which was Foxworth's day off, Troy Ulrich unsuccessfully attempted to contact Foxworth. When Foxworth became available later that same day, he attempted to call Troy Ulrich back, but was unable to reach him. On Monday, November 9, 2009, Troy Ulrich called Foxworth into his office and told him that he was no longer a reliable employee, explaining that he couldn't reach him on the previous Saturday, Foxworth's day off, and asked Foxworth to step down or be fired. Foxworth opted to step down, taking a demotion and pay-cut.

### XII.

On Wednesday, November 11, 2009, Foxworth was asked to go home because he was sick. The following day, Foxworth called in sick as well. The Defendant company was closed the following Friday, Saturday and Sunday.

### XIII.

On Monday, November 16, 2009, Foxworth reported to work and was immediately summoned to the corporate office to speak with Troy Ulrich at which time, Foxworth was terminated for unprofessional conduct.

### XIV.

In January of 2010, Foxworth contacted Rob Roberts about the bonus he was told to wait on. Foxworth was told by Troy Ulrich that he was not obligated to give him anything since he had not been in his position for a full year. When Foxworth inquired as to why Justin Eckridge, a white male, who had also not been in his position for a full year was given an annual bonus, Foxworth was told, by Troy Ulrich that he would talk it over with Rob Roberts and call him the following week. After no call was forthcoming, Foxworth called Rob Roberts and was told that Troy Ulrich had his bonus check in the amount of $1,200.00. Justin Eckridge, a white male, received a bonus check in the range of $12,000.00 to $18,000.00 for the same job.

## DEATH OF FOXWORTH

### XV.

Beginning in November of 2009 when Foxworth was terminated, he became depressed which led to heavy drinking and a tendency to take muscle relaxers to sleep.

### XVI.

On April 20, 2010, Foxworth lost his balance, fell and struck his head, which ultimately caused his death.

## ADMINISTRATIVE PROCEEDINGS

### XVII.

On March 5, 2010, Foxworth filed an EEOC complaint. Shortly thereafter, the Defendant company opted to mediate the claim and offered a dollar amount which was unacceptable to Foxworth.

### XVIII.

On June 18, 2010, the EEOC issued a Notice of Right to Sue letter to Foxworth.

### XIX.

This complaint was filed within 90 days of the Plaintiff's receipt of the Notice of Right to Sue letter.

### XX.

Plaintiff has complied with all statutory and administrative prerequisites to filing the suit.

## CAUSES OF ACTION

### Count One: Violations of Title VII

### XXI.

During Foxworth's employment with Defendant company, he was a member of a protected class (i.e. African American race).

## XXII.

The actions of the Defendant, as described above, constitute discrimination against Foxworth because of his race (African American) in violation of Title VII.

## XXIII.

As a result of Defendant's wrongful conduct, Foxworth's Estate is entitled to an award of damages and all other available relief under Title VII (including, without limitation, lost wages, interest, bonuses, emotional distress damages, death benefit, attorney's fees, litigation expenses, costs and punitive damages).

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff requests this Court enter a judgment against the Defendant for relief requested above in an amount of at least $250,000.00 actual and compensatory damages, and $250,000.00 punitive damages, prejudgment interest on all lost wages and other past due monetary relief, post-judgment interest, attorneys fees, litigation expenses, costs of court, and all other relief to which she may be entitled.

**RESPECTFULLY SUBMITTED,** this the 17th day of September, 2010.

SHAKESHIA FOXWORTH,
Administratrix for the Estate of
Lester Wade Foxworth

Stephanie N. Morris, MSB#101545
Charisse C. Gordon, MSB#101155

**OF COUNSEL:**
MORRIS & ASSOCIATES
P.O. BOX 656
900 S. CHRISMAN AVE.
CLEVELAND, MS 38732
TEL: 662.846.6691
FAX: 662.843.8136

6

STATE OF MISSISSIPPI  §
COUNTY OF FORREST  §

     **THIS DAY** personally appeared before me the undersigned authority in and for the above jurisdiction, the within named **SHAKESHIA FOXWORTH**, who upon being duly sworn by me, stated upon his/her oath that the facts, statements and allegations contained in the foregoing Complaint are true and correct as therein stated, and that he/she signed same as his/her own voluntary act and deed.

     **SWORN TO AND SUSCRIBED** before me on this the 17th day of Sept., A.D., 2010.


NOTARY PUBLIC

(SEAL)